Speaking of which, the first case is United States v. Conley, Case No. 22-5112. And if counsel is ready to proceed, we'll hear your argument. Thank you, Your Honor. May it please the Court, my name is Lynn Hartfield, and I represent the appellant Pamela Conley. And I do want to mention that I'd like to reserve time for rebuttal if it works. There are two issues before the Court today, and I'm going to start with the first, which is the loss calculation issue. So to simplify things, I'd like to highlight what the parties agree on. The parties agree that in calculating loss under 2B1.1, we start by assessing what the intended loss and the actual loss, and we pick the higher of the two. And the parties agree that in this case, the intended loss at Step 1 is the value of all the loans that Ms. Conley either got or sought, and that amounts to about $1,028,000. The parties also agree that the restitution amount is approximately $450,000, which is, as you can see, quite a bit less than the intended loss. Now, the government now seems to agree on appeal, contrary to what they argued below, that the guideline calls for a two-step process. First, we take the intended loss, and then we subtract per note 3E payments that were made on the loans or collateral recovered. So where the parties diverge is whether this case needs to be remanded for resentencing. Now, the court calculated the loss at about $1,020,000, so only $8,000 less than that intended loss. And that is $570,000 more than the restitution amount, which, by definition, reflects what the banks recovered. So I think it's safe to conclude that the district court's loss figure is wrong. Does restitution include any write-offs? In other words, we're not even going to try to collect it? Not that I know of. Does that matter? You know, I think it certainly could, but there's no evidence that that's what it included. Do we really even know what the 462 is? You know, what we know is that the pre-sentence report calculated that, and that the government had given the probation office information about payments made and collateral recovered, but apparently they didn't give it to the defense, and they certainly didn't give it to the district court. So the district court just went by what the pre-sentence report said. Counsel, could I ask you to tell us your understanding of exactly what the district court did here on this issue? Did it deny Ms. Connolly's objection to the loss amount because her objection was insufficient or because it found the loss amount in the PSR to be appropriate? I think the court was confused. If we look at the colloquy, the court is all over the place in terms of what the guideline is supposed to, how it's supposed to be applied. What we had is first the probation office came up with a figure, and they said the loss amount was $1,028,000 based on intended loss. Then Ms. Connolly's lawyer submits an objection saying, no 3E says you're supposed to subtract the payments made and the collateral recovered. So we think that the loss amount should be equal to the restitution amount. Well, I know, but my question is still, what ultimately was the ground for the district court's decision on setting this offense level? Did it just accept what was in the PSR? Ms. Connolly files objections, makes objections to sentencing. Did the court say the objections were insufficient because they weren't specific enough, or did the court move on from there and say even if the objections are sufficient, I'm going to stick with this amount? We need to understand what it is the court did. Yeah, I think what happened is that after, because I do think it's important what happened before it even got to the court, which is that Ms. Connolly filed this objection. The probation office then said, okay, fine. We'll subtract this $8,000 for this one car. And that's where the $1,020,000 comes from. Then in court, the prosecution was arguing she gets no reductions. And the defense was arguing, no, she does get reductions under 3E, and we think that's going to equal the restitution amount. Which was, I mean, incorrect. I mean, there was some misstatement that wasn't there by defense counsel in terms of just saying it's going to equal the restitution amount automatically when you didn't even know what the amounts were. That's the best guess, given the information that the defense had. But that's not really what the formula. It was a misstatement as to how the formula works. It doesn't just equal restitution. You do your deductions. You do your deductions for payments and collateral recovered. Payments made, collateral recovered. And then you reach this amount. But it doesn't necessarily, as defense counsel was saying, equal the... That's certainly the best estimate, given the information that the defense had. Okay. That's not how it was portrayed, though, that it was an estimate. I think there was repeated statements that it was the restitution amount. That it would be the restitution amount, yes. And the court didn't accept that, obviously. But I'm just clarifying that I think there was some misstatement in terms of defense counsel's... I would characterize it as the best estimate the defense could have given, given the information that it had. Because it was given two figures. It was given intended loss and restitution. And the defense said, it's going to be the restitution amount, because restitution, by definition, reflects payments made and what the banks actually got back. But the defense didn't really specify amounts for payments made or collateral, did it? No. And there's evidence that the defense didn't have that information. Because in a set of objections filed, and that's in the supplemental record, the defense lawyer says, I don't have those figures. Can you give them to me? I don't have the payments made, and I don't have the value of the collateral that was recovered. The district court solicited that information. Sentencing said, OK, fine. I have read note 3E. I understand your argument. Tell me. Give me some information, and I'll start subtracting things off. At which point, defense counsel said, we don't know. And at that point, back to Judge Matheson's original question, the court had given defense counsel an opportunity to decrease the intended loss, the actual loss, and defendant failed, didn't have any information. At that point, can't the court simply adopt the number that's been given in the pre-sentence report? Well, no, because what the court did was listen to the prosecution,  and if you subtract anything, that's going to transform it into the actual loss. And that's what the court was going with. The probation office, for some reason that is not clear from the record, subtracted one item of collateral. That's it. But it's clear that there were other items of collateral, and it's also clear One reason, and we're only talking about $90,000, right, because restitution is $460,000, and the guideline for plus 14 levels is at $550,000. So you've got to come up with $90,000 government. And so you only need $90,000 of intended, even if it wasn't incurred, intended loss. And there was evidence that the defendant here had been recycling collateral, which is to say using the same collateral to get different loans. Surely, and the district court said this, surely in doing that, that's intended loss. And therefore, the court said I only need $90,000. You can't say we're going to deduct the collateral off of these various loans when you're using the same collateral for different loans. And so this is an easy one. I know it's over $550,000. I don't have to be that precise by the language of the guideline, plus 14 levels. That sounds affirmable. Tell me why not. Well, because the restitution amount wouldn't reflect reused collateral. The restitution amount would reflect only amounts actually received by the bank. The restitution amount is what is the bank going to get that they haven't already gotten. So that would reflect all the payments made, and that would reflect collateral recovered if they had actually recovered it. But it wouldn't reflect collateral that was reused. This seems to be loss throughout, which is intended loss is different than actual loss. It absolutely is. And the intended loss could be the whole thing, because the defendant thought that she could run this scheme for years and years and that the banks would have to eat all of this, even if the banks ultimately got some collateral back or wrote off the loans or whatever else. And you only got to come up with $90,000. It just seems that I'm sitting where the district court did, which is this is easy. It's over $90,000 until you tell me something different, defendant. And so 14 levels. Well, I would agree that, of course, intended loss incorporates everything, every loan she tried to get or got. And there's one bank that didn't give her the loan she sought. But 3E says you deduct all payments made or collateral recovered. So that $90,000, I think it's a little more than $90,000, that the court would need to get to the next level. It's just there's no evidence in the record that that restitution amount doesn't, in fact, reflect payments made and collateral recovered that would have been subtracted from the intended loss. The problem with this case, again, is evidence just isn't there. And that's why we're asking for remand. Thank you, counsel. Assuming that the defense made an adequate objection to the PSR, both in writing and at the sentencing hearing. In other words, the defense says the intended loss amount shouldn't be the final number. It should be a different number. We need these deductions for payments and return of collateral. At that point, who has the burden? So at that point, the defense gave an alternative calculation, which would be the restitution amount. Who has the burden then of showing the court what the right number should be? The government. The defense or the government? The government has the burden to prove any loss enhancement. And in this case, what the government had was a reasonable estimate given by the first defense lawyer. And it came back, and instead of saying, no, no, no, those aren't right, we've got different amounts of collateral recovered or different amounts of payments made, they came back and said, no, you don't get any deductions. You say the burden's on the government. Isn't that what this is all about at this point? If there's a dispute about what the amount should be, and if that doesn't disappeal, turn on which side has the burden? It seems to me that the defense, by citing the restitution amount, met any burden of production it might have had. Now, I'm not conceding that they had any burden of production at all. I think it's the government's responsibility to get it right. But even if there is some burden on the defense, they met that burden of production. It was on the government then to come back and say, no, the restitution amount is not the correct amount given 3E. And I see I'm running out of time, so if the court doesn't have any more questions on the guideline issue, I did want to touch on the Dubin issue. So the Dubin case basically is a sea change in how aggravated identity theft is interpreted. The one thing that I would say is that although the Dubin case doesn't give the court clear guidance on how to apply it, there are a few principles that I think are important in this case. One is that it's not enough that the aggravated identity theft be a but-for cause of the success of the scheme. Two, look at the title of the offense, which is aggravated identity theft, and this is certainly not aggravated conduct here. Looking at the Webster's and Black's dictionary definition and the fact that this is a two-year mandatory consecutive sentence. And so when we look at the conduct involving the forging of the lien releases, it's fairly small in the scheme of things. And for that reason, we would ask that the court reverse those convictions. Isn't it the crux of the criminal activity, unlike in Dubin, which it was just using patient names, but the object was to increase the amount of the fee. Whereas here, without using those particular bank employees' names and signatures, the lien release would be awfully suspicious. In other words, it aided the offense. It's certainly at the crux of the lien release part, but we're talking about the whole bank fraud case. So I would say that we have to look at where does the lien release fall in the scheme of the bank fraud case. I have almost no time, so if the court doesn't have any other questions, I would reserve my remaining seconds for rebuttal. Thank you. Thank you. Thank you. Counsel. May it please the court, Stephen Bryden for the United States. As the court was just discussing, this case turns on the question of whose burden it was at which point in time regarding the loss calculation issue in this case. To clarify the government's position, in this case, original counsel for Ms. Connelly filed an objection. That objection itself was just a straight recitation of the guideline, calculation method, and then a bald statement that there are monies that should be counted towards this loss calculation without any explanation or specific details. Did that objection indicate that counsel believed that the restitution amount was the ultimate loss amount? That's correct, Your Honor. So why isn't that enough then in light of the lack of any other information, the PSR about payments or any kind of specifics as to collateral returned or payments made? Why isn't that objection which says we think it is the loss amount based on the guideline comment, why isn't that sufficient to put the burden on the government to say, well, no, it's not the loss amount. Here's why. Here's the amounts that should be deducted from actual loss under the guideline. And that didn't happen. That's correct, Your Honor. It did not happen. And the issue is because restitution calculation is just different from the intended loss calculation, there's one important difference in this case, which is under the guideline in order to get credits against intended loss for any payments made or monies returned, it has to be done before the discovery of the criminal activity or before a defendant would reasonably believe that their criminal activity is about to be discovered. I understand that. But I guess assuming that we don't agree with your suggestion that her objection or the counsel's objection wasn't specific enough and that it was specific enough, why didn't that put the burden back on the government to say, yeah, it's not restitution, but here is what it was. Here are the payments that we have the burden to show. In the reply brief in this case, the argument has been that this was a legal objection all the time and not a factual objection. And it would only have required the government to be put to its burden of production if there was a sufficient factual objection made in the case. And that's what I'm saying. Let's assume there was. If there was a sufficient factual objection in the case, the government would have had the burden of production to put on that offense. And that didn't happen. And if you look to cases like Barnett, in determining whether or not a sufficient basis, in Barnett the defendant actually went so far as to produce some documentation that would have backed up his claim that there were monies that weren't counted that should have been counted. And in this case, there is none. And Ms. Conley has argued that she doesn't have access to that information. And the government is not arguing that in order to have this argument, this factual argument, you have to put forward an entire record of every payment made. But she certainly knows collateral, if there was collateral seized, that she could have alleged. And she certainly knows payments that she made, not down to the dollar figure. And putting those type of things into an objection is the type of thing that would then trigger the district court's fact-finding obligation under Rule 32. Is that a little bit hard to do when the government's initial figures under the PSR are simply, here's the actual loss? That's it. Nothing else. And so the government hasn't made any attempt to meet its actual, you know, its burden in the beginning. So you're suggesting that even though we have nothing, no specifics of the PSR, nevertheless, and we've got somewhat faulty objection by defendant, it's still the defendant's obligation to come up with those specifics that the government never came up with? For the gatekeeping function talked about in Barnett to have any meaning, there does have to be some burden of production here. And I'll say that what's in the PSR is based off of the discovery provided as a part of the criminal case, which defense would certainly have had access to. There is a statement in the PSR that they were looking for more information from the banks about possible payments or offsets. But the entirety of the government's discovery was turned over to the defense in this case. But do our cases, it seems to me that our cases don't require all that much by way of objection. So in the first instance, we have Rule 32 to begin with, and it just says that a court may accept any undisputed portion of the pre-sentence report as a finding of fact. Well, Ms. Connolly does dispute the number in the PSR, doesn't she? She disputes the number in the PSR. Isn't it a disputed number? Wasn't it disputed at sentencing? I mean, the district court repeatedly asked her if there were monies returned or monies paid that she believes should be deducted from the intended loss and what those amounts were. It seems the court was alerted to the fact that she was challenging the number in the PSR. Why isn't that enough? I think the court was looking for her to provide enough information that would actually call these things into question. Well, we said in Harrison that it was sufficient to object, and I'm quoting, that there are several mistakes in the amounts that were in the PSR. It didn't set a very high bar to state an objection. And it seems that it's on the government to show what the sentence should be, and here the question was, is a defense level 14 because of the amount of loss? Why wouldn't the government have to put something on the table beyond just pointing to the PSR? And Rule 32 doesn't contemplate that. I agree, Your Honor, that there's not a large—it's not a significant gatekeeping function. We're not asking for the defense to prove up exactly what their version of the loss calculation would be in order to trigger the fact-finding, but especially in cases like this, in complicated white-collar cases where we're talking about millions of dollars and we're talking about significant records, if every time the defendant said, I just disagree without explaining what that disagreement is in a meaningful way, then there would be no functional gatekeeping issue. There were references to—at least general references to payments being made. There were references to specific vehicles during the sentencing hearing. It wasn't just we disagree. There were some at least general examples given. The information about the vehicles was discussed in the restitution portion of the hearing after the court had ruled on the loss calculation portion, and there was never an attempt to reopen that. And the judge gave, as you discussed already, multiple opportunities for defense if they wanted to bring up those collateral, if they believed that that collateral should be counted during the portion of the proceeding that was about the loss calculation. The district court also specifically read to the parties the description in the loss calculation about how to consider whether monies are returned before or after the conduct is discovered out loud during the court hearing. And again, Ms. Conley did not make any representation or even just a statement that, yes, there were monies returned. I paid this bank some money before my scheme was discovered. And all that would have been sufficient under this court's precedence, but she just didn't consider that. So what would have been sufficient here? What sort of an objection? An objection that says the GMC, Sierra, was returned to Tinker Federal Credit Union, the Baja Bank, assuming the Baja boat was returned, or Ms. Conley made multiple payments to her original loans from prior loans that she'd taken out. I think what the court's precedents are looking for is something just a little bit more than just a flat-out statement that a calculation is wrong. Would that be enough, the two boats, when, isn't the question, nobody's arguing actual loss here. It's all intended loss, right? Correct. And so even if the boats were recovered, that wouldn't mean that there would be a credit for intended loss. There could be a credit for intended loss after the recovery of the boats. Under this court's precedent, collateral that is returned to the banks prior to the sentencing hearing can be credited. It does not, as far as I've been able to determine, have the same limitation of monies returned that they'd be returned prior to. If you had two boats, and I'm not saying this is the fact, but I do know that this runs through this case, where collateral is used in more than one loan, and the property is found somehow, and every effort of a defendant, not necessarily this one, was to hide that collateral, and there are cases on this, even though the property was found and sold and some money was obtained, that might affect the actual loss but not the intended loss, is my understanding. But you seem to be saying otherwise. So, Your Honor, there was a line of cases from the Tenth Circuit prior to the change in the guidelines, and I wish I could remember the name of the case right now, but I can't, but it involved essentially somebody who was selling cattle that were under a bank loan, and that applied old Section 2F of the fraud guidelines, and that section no longer exists. Long time ago. And those cases, as far as I can tell, have never been overruled, but the government did not rely on them in their briefings today, because there has been, as far as we can tell, no cases that discuss that issue similarly since the change in the guidelines. Yeah, but she said that the parties don't disagree on the formula, right? I mean, I take it that the formula is loss equals actual or intended loss minus credits against the loss. So you credit against intended loss if that's the starting number, correct? That's correct. All right. So why doesn't her objection, which specifically says, because her loans were collateralized by checking accounts, vehicles, and other valuable property, and because many of the loans were paid off with the proceeds of the new loans, and because various institutions recovered and set off collateral, she's entitled to have the loss reduced. Now, again, she gets it wrong. She says it's automatically the restitution amount, but she has that objection. And essentially what her objection is saying is you don't list any of these. You don't list any payments, government. You don't list any. It's your obligation. You don't list any. No payments, no collateral recovered. And so I'm telling you in my objection, none of that is there. I made some. This isn't right. Why doesn't that put the court on alert then that, oh, we don't have any of that in the PSR? The government didn't meet its initial burden. You're basically forcing her to come forward now and meet what should have been the government's initial burden. Ultimately, there's one big hiccup to that, which is the conversation of whether or not any payments were made before her criminal activity was discovered. But we don't know. That's the problem is it's not there. And whose fault is that? Whose burden is that? Well, ultimately, the question is whether or not the PSR number can be trusted. And the PSR number agrees or gives credit for some collateral returned on its face. And so we can't say that the probation report on its face does not consider. Is that for the one item, the car? It is for the one item. Well, that wasn't even accurate, was it? Wasn't the car worth more than $8,000? I do not know. I don't think there's clear information on the record that I can say what the car was worth. But considering that probation is considering that, then it's a question of whether or not she's doing enough to put those facts in dispute. And, again, without putting forward something that could trigger that fact-finding obligation under we've actually made these payments prior to the discovery of the loan, that's not getting at the issue that's important. Why wouldn't the objection based on the restitution amount, even if there are problems with saying it's the restitution amount, but why wouldn't lodging an objection and saying, Your Honor, how could it be over a million dollars when the restitution is for $451,000? Why wouldn't that even be enough to put the burden on the government to say, Okay, Your Honor, here's how we get to the number? Because ultimately what you need to make a factual objection to is the calculation in the guidelines. And simply by saying, I think another number is the right number without tying it to this is why it's the appropriate calculation on the guidelines, it's not a number the court could adopt legally. It's an incorrect number as a matter of law. Maybe not, but why isn't it enough to say to the government, You know, you've got to help me here to understand how you got to this number. Why should I just read the PSR and say, Oh, that's okay. Ultimately, for the gatekeeping function that this court has talked about in Barnett and other cases have meeting, it does require that the defense make some showing that is actually consistent with the rule and not just putting forward a number that is not legally correct. By the way, are you making an alternative ground to affirm here? Was the government's position in district court that it made an adequate showing? Not that it challenged the sufficiency of the objection? Your Honor, I think if it's a factual objection, the record, excuse me, it's a legal, Your Honor, I see I'm out of time. If you'd like me to answer? Sure. If it is a legal objection, which is what's put forward by defense, then the government does believe that the court's decision was reasonable. If the PSR is not called into question as it would not be an illegal objection. However, we are not making an alternative grounds to argue that if this was a sufficient factual objection, the government would have had the burden to produce documentation to support that. And the government did not do that in the hearing. Thank you. Thank you. Your Honor, I just want to clarify one thing in response to a question from Judge Phillips, and that has to do with what is the relationship between collateral and intended loss. I think we're now in agreement that the way that the guideline calculation goes is that we first take the amount of the loans that Ms. Connolly either sought or obtained. That has nothing to do with collateral. There's no collateral at Step 1. At Step 2, what the court is supposed to do, pursuant to Note 3E, is to subtract the value of the collateral recovered. So if she were reusing collateral, that would not be counted twice. It would only be counted once for any bank that actually recovered the collateral. Thank you, Your Honor. And for the reasons set forth in the briefs and in argument, it asks that the case be remanded and that her aggravated identity theft convictions be vacated. Thank you. Thank you, counsel. Thanks to both of you for your arguments this morning. The case will be submitted, and counsel are excused.